ANTHONY J. DAIN (PRO SE)
Anthony J. Dain (Bar No. 98947)
ANTHONY.DAIN@PROCOPIO.COM
13272 CAPSTONE DRIVE
SAN DIEGO, CA  92130
Telephone:  619.515.3241
Facsimile:   619.744.5441

Attorney for NON-PARTY ANTHONY J. DAIN

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE BLACK,<br><br>        Plaintiff,<br><br>v.<br><br>CHERIE WRIGLEY, MELISSA COHENSON, BRIAN A. RAPHAN, P.C., and PAMELA KERR,<br><br>        Defendant. | Case No. **'18 CV 2367 GPC BGS**<br>Case No. N.D. Ill.: 17-cv-101<br><br>MOTION TO QUASH NON-PARTY OUT OF STATE SUBPOENA |

# **TABLE OF CONTENTS**

**Page**

I.     FACTS OF THE SERVICE OF THE SUBPOENA AND NON-PARTY'S ATTEMPTS TO COMMUNICATE WITH PLAINTIFF'S COUNSEL TO RESOLVE THE ISSUE BEFORE HAVING TO FILE THIS MOTION ............ 2

II.    THE SUBPOENA SHOULD BE QUASHED UNDER F.R.C.P. RULE 45(D)(3)(A) FOR ITS MULTIPLE INVALIDATING VIOLATIONS ............... 7

III.   SANCTIONS SHOULD BE IMPOSED AGAINST PLAINTIFF AND MR. SCHAALMAN FOR THEIR ABUSE OF THE DISCOVERY PROCESS AND FEDERAL RULES. MR. SCHAALMAN SHOULD BE SPECIFICALLY SANCTIONED BECAUSE HE IS AN EXPERIENCED LITIGATOR WHO HAS BEEN SANCTIONED BEFORE FOR EGREGIOUS DISCOVERY ABUSES; MOST RECENTLY IN 2013, SCHAALMAN WAS FOUND TO HAVE CONCEALED EVIDENCE PROVING THAT HE AND HIS PLAINTIFF CLIENT WERE ILLEGALLY INFLUENCING THE JUDGE SITTING ON HIS CASE; THE STATE SUPREME COURT AFFIRMED A SPECIAL MASTER'S DISMISSAL OF THE CASE FOR THE ILLEGAL INFLUENCING SCHEME, AND AFFIRMED A JOINT AND SEVERAL DISCOVERY SANCTION AGAINST SCHAALMAN AND HIS CLIENT FOR THEIR DISCOVERY ABUSES IN THE AMOUNT OF $1,500,000; THE STATE SUPREME COURT FOUND THAT SCHAALMAN HAD, "PREJUDICED THE ADMINISTRATION OF JUSTICE AND THE INTEGRITY OF [IT'S] PROCEEDINGS." ............................................. 9

IV.    REASONABLE SANCTIONS ARE THE VALUE OF MR. DAIN'S HOURLY RATE INCURRED IN MOVING TO QUASH, WHICH HE COULD HAVE OTHERWISE SPENT PRODUCTIVELY AT HIS PARTNERSHIP; ADDITIONALLY THE OUT-OF-POCKET COSTS OF FILING THIS MISCELLANEOUS ACTION AND FOR SERVICE OF THE ACTION ON PLAINTIFF SHOULD BE AWARDED ............................ 15

V.     ALTERNATIVELY AT THE COURT'S DISCRETION THE MATTER SHOULD BE TRANSFERRED TO THE DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO F.R.C.P. RULE 45(F). ..................................................................................................... 16

VI.    CONCLUSION ..................................................................................... 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4

5 *Agincourt Gaming, LLC v. Zynga, Inc.*
No. 2:14-CV-0708-RFB-NJK, 2014 WL 4079555 (D. Nev. Aug. 15,
6 2014) ................................................................................................................ 10

7 *Caretolive v. Von Eschenbach*
8 2008 WL 552431 (S.D.Ohio Feb. 26, 2008) ........................................... 10, 11, 15

9 *Chambers v. NASCO, Inc.*
501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ........................................ 14
10

11 *e.K. v. Does*
2011 WL 5104095 (N.D. TX, Sept. 9, 2011) ................................................. 13, 14
12

13 *In re Byrd, Inc.*
927 F.2d 1135 (10th Cir. 1991) .................................................................... 10, 13
14

15 *Jefferson v. Biogen*
2012 WL 1150415 (Apr. 5, 2012 E.D. NC.) ......................................................... 8

16 *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*
17 529 F.3d 371 (7th Cir.2008) ............................................................................... 13

18 *Lee v. Max Int'l, LLC*
19 638 F.3d 1318 (10th Cir. 2011) ........................................................................... 14

20 *Legal Voice v. Stormans, Inc.*
738 F.3d 1178 (9th Cir. 2013) ............................................................................. 12
21

22 *Legion Ins. Co. v. John Hancock Mut. Life Ins. Co.*
33 Fed. Appx. 26 (3d Cir. 2002) ........................................................................... 8
23

24 *Mattel, Inc. v. Walking Mountain Prods.*
353 F.3d 792 (9th Cir. 2003) ............................................................................... 13
25

26 *Mount Hope Church v. Bash Back!*
705 F.3d 418 (9th Cir. 2012) ............................................................................... 13

27

28 *Raap v. Brier & Thorn, Inc.*
2017 WL 2462823 (C.D. Ill. July 7, 2017) ......................................................... 10

ii

*Stevenson v. Union Pac. R.R.*
   354 F.3d 739 (8th Cir.2004) ................................................................. 14

*Theofel v. Farey-Jones*
   359 F.3d 1066 (9th Cir. 2004) ............................................................. 13

*Thompson v. Carrier Corp.*
   2009 WL 3446391 (M.D.Ga. October 21, 2009) .................................. 14

*Tiberi v. CIGNA Ins. Co.*
   40 F.3d 110 (5th Cir.1994) ................................................................... 13

*Tidwell–Williams v. Northwest Georgia Health System*
   1998 WL 1674745 (N.D.Ga. November 19, 1998) ............................... 14

*Topalian v. Ehrman*
   3 F.3d 931 (5th Cir.1993) ..................................................................... 13

*Unigard Sec. Ins. v. Lakewood Engineering & Mfg. Corp.*
   982 F.2d 363 (9th Cir. 1992) ............................................................... 14

*Urban v. United States*
   2006 WL 2037354 (N.D. Ill. July 14, 2006) ....................................... 14

*WH Holdings, LLC v. Ace American Ins. Co.*
   2010 WL 3732149 (9/17/10 N.D. Ill.) .................................................... 8

*XTO Energy, Inc. v. ATD, LLC*
   No. 14–1021 JB/SCY, 2016 WL 1730171 (D.N.M. Apr. 1, 2016) ..................... 10

**OTHER STATE CASES**

*Consolidation Coal Co. v. Bucyrus-Erie Co.* (1980)
   93 Ill.App.3d 35 ................................................................................... 11

*Eaton Corporation LLC v. Frisby LLC* (2013)
   133 So.3d 735 ...................................................................................... 12

*RRR Farms, Ltd. v. Am. Horse Protection Ass'n*
   957 S.W.2d 121 (Tex.App.-Houston [14th Dist.] 1997, pet. den.) ..................... 13

DOCS 999999-901049/3430899.2

**FEDERAL STATUTES, REGULATIONS, AND RULES**

Federal Rules of Civil Procedure

Rule 26(g) ................................................................................................ 1, 13
Rule 26(g)(1)(B)(i) ......................................................................................... 14
Rule 26(g)(1)(B)(iii) ....................................................................................... 14
Rule 26(g)(3) ................................................................................................... 14
Rule 45 ................................................................................................... passim
45(a)(1)(A)(ii) ................................................................................................... 8
Rule 45(a)(1)(A)(iii) .......................................................................................... 1
Rule 45(a)(1)(A)(iii) ............................................................................... 1, 8, 16
Rule 45(c) .......................................................................................... 1, 9, 10
Rule 45(c)(2)(A) ............................................................................................. 10
Rule 45(d)(1) ........................................................................................... 1, 9
Rule 45(d)(3)(4) ................................................................................................ 1
Rule 45(d)(3)(a) ................................................................................................ 7

Federal Rules of Evidence, Rule 201(b)(2) ..................................................... 8

**LOCAL STATUTES, REGULATIONS, AND RULES**

United States District Court
Northern District of Illinois
Local Rule 16.1(4) ................................................................................. passim

DOCS 999999-901049/3430899.2

The above-captioned matter is before the Court for the District Court of the Northern District of Illinois, Civil Action No. 17-cv-101.   Non-Party Anthony Dain was served with a subpoena in San Diego, California, and moves to quash in this miscellaneous action.

Non-Party Anthony Dain's Motion to Quash a Subpoena for Production of Documents Served on Him by Plaintiff After the Close of Discovery in a Northern District of Illinois Case, in Violation of that District's Local Rule 16.1(4), which Fails to State a Date or Time for production in Violation of F.R.C.P. Rule 45(a)(1)(A)(iii), which Demands production in Milwaukee, Wisconsin in Violation of F.R.C.P. 45(c), and which makes such an Overly Broad and Late Demand that  it Subjects Mr. Dain to an Undue Burden in Violation of F.R.C.P Rules 45(d)(1) and 45(d)(3)(4); Request for Sanctions Under F.R.C.P. 26(g) and 45(c); Alternative Request to Transfer to Northern District of Illinois

Pursuant to Federal Rule of Civil Procedure 45, non-party Anthony Dain moves to quash a subpoena to produce documents served upon him by Plaintiff in a Northern District of Illinois action after the close of discovery in violation of Northern District of Illinois Local Rule 16.1(4).  The subpoena also violates Federal Rule of Civil Procedure 45(a)(1)(A)(iii), in that it fails to specify a time for production; the "Date and Time" box on the subpoena are simply blank.  Moreover, the subpoena violates Federal Rule of Civil Procedure 45(c) as it commands as the place of compliance Milwaukee, Wisconsin, which is more than 100 miles from San Diego. Finally, the subpoena requests documents that are so broad as to subject Mr. Dain to further undue burden in violation of Federal Rule of Civil Procedure 45(d)(1) and 45(d)(3)(4).

DOCS 999999-901049/3430899.2

# I.

## FACTS OF THE SERVICE OF THE SUBPOENA AND NON-PARTY'S ATTEMPTS TO COMMUNICATE WITH PLAINTIFF'S COUNSEL TO RESOLVE THE ISSUE BEFORE HAVING TO FILE THIS MOTION

On Friday September 14, 2018 - the cutoff date for discovery in the underlying matter - at 5:00 p.m., Plaintiff's counsel Michael Schaalman sent an e-mail to non-party Anthony Dain cryptically stating, "Mr. Dain, here is the second subpoena for the production of documents."[1] The e-mail is attached to the Declaration of Anthony Dain as Exhibit 1. Mr. Schaalman included as an attachment to the e-mail a Subpoena to Produce Documents. The subpoena is attached to the Declaration of Anthony Dain as Exhibit 2.

The attached subpoena had no return date or time; the box labeled Date and Time on the subpoena face was simply blank. The subpoena also commanded Mr. Dain to produce the requested documents at the law offices of Halling & Cayo in Milwaukee, Wisconsin. Mr. Dain resides and works in San Diego, California. In contrast to the narrow, relevant focus of the first request served upon Mr. Dain, this second subpoena commanded production of categories of documents that were extremely broad and reached far beyond what would be reasonably calculated to lead to discoverable information in the underlying case.

---

[1] On or about August 1, 2018, Mr. Schaalman had served upon Mr. Dain a first subpoena for deposition testimony and a request that Mr. Dain produce, "All correspondence (emails, texts, voicemail messages) by and between you and Pamela Kerr, Melissa Cohenson, or Cherie Wrigley relating to or concerning communications with Northwestern University regarding Katherine Black." This narrow request was relevant to the underlying complaint which, following motions to dismiss, was narrowed to confined allegations of defamation and intentional infliction of emotional distress against the Defendants. Non-Party had only a relative few responsive documents to this request, all related to a single subject matter and which were privileged. Mr. Dain is Defendant Ms. Wrigley's brother, but also gave her advice as an attorney. Mr. Dain produced a privilege log identifying the e-mails that were responsive to the request ,providing the dates, authors and recipients, subject matter and basis for the claim of privilege. Mr. Schaalman took Mr. Dain's deposition on September 6, 2014 in San Diego, California. There was no discussion during the deposition indicating Mr. Schaalman was going to attempt to serve a second subpoena to Mr. Dain, let alone for production after the discovery closing date. (Declaration of Anthony J. Dain, ¶ 5).

The second subpoena commanded production of: "All documents or communications (from May 2012 – the present) relating to: (1) Katherine Black; (2) Katherine Black's children (Daniel Black and Jacob Black)[2]; (3) any lawsuit or other dispute in which Katherine Black or her children are parties; (4) any motions, complaints, reviews, grievances, reports filed before anywhere (sic) relating to Katherine Black or her children, and all communications related to such documents; (5) the proceedings before Justice Aliotta[3]; (6) all communications with any guardian, attorney, or other individuals representing the interests (sic) Katherine Black's children, and all documents relating to these communications."

Later in the evening of September 14, 2018, Mr. Dain sent Mr. Schaalman an e-mail stating: "Can you please supply me the authority that permits you to e-mail me - a non-party witness - a subpoena on the date of the discovery closing date? Without addressing whether service is proper, responses (for which you provide no date) would necessarily fall outside what I understand to be your cutoff date.  As I

---

[2] As an example of the overbreadth and irrelevance of the document request, this category relates to a separate series of lawsuits brought in the District Court for the Eastern District of New York by Plaintiff and her husband Bernard Black.  Bernard Black had stolen a huge sum of money from his disabled sister Joanne after concocting a scheme to become Joanne's conservator in Denver, Colorado. A copy of the Colorado Court of Appeals' published Opinion affirming the finding of Civil Theft against Mr. Black and surcharge of $4.5 million is attached to the Declaration of Anthony Dain as Exhibit 3.  Mr. Black laundered the money he stole through multiple bank accounts and ultimately placed some of the money into a trust for the benefit of him and his children.  In an attempt to end-around the Colorado Courts' rulings of theft, he and Plaintiff concocted another scheme to have his wife, acting as guardian ad litem for the children sue among others, Mr. Dain, who is Joanne's cousin as well as Trustee of her Supplemental Needs Trust (where the stolen money should have been), the forensic accountant who uncovered the theft (Defendant Kerr in the underlying case), Joanne's New York and Colorado attorneys, and Joanne's cousin Cherie Wrigley. The purpose of the lawsuits is to evade returning the stolen money and instead allow Bernard Black and his children to keep it.

[3] As another example of the overbreadth and irrelevance of the requests, this category relates to Justice Aliotta, a Supreme Court Justice in New York. Justice Aliota had previously overseen a guardianship proceeding brought by Bernard Black to become Joanne's guardian in New York.  This guardianship proceeding was another attempt to end-around the Colorado Court rulings.  Providing false allegations to Justice Aliotta about the Colorado proceedings and about actions taken by Joanne's attorneys, the forensic accountant and others Plaintiff and Bernard Black obtained a temporary restraining freezing the stolen assets.  The TRO was later vacated after a hearing.

read Rule 16.1.4 of the Local Rules of the United States District Court of the Northern District of Illinois – and as I've understood in every matter I've litigated in federal court as an attorney these many years – the discovery closing date is the date upon which all discovery must be completed.  I'm pretty sure there is also a plethora of case law finding improper an attempt by a party to serve discovery for which a response would occur after the discovery cutoff.  However, perhaps I am missing something; I certainly don't want to file a motion for protective order and sanctions in the Southern District of California if I'm wrong." The e-mail is attached to the Declaration of Anthony Dain as Exhibit 4.

Mr. Schaalman did not respond.  Therefore, on the following Monday, September 17, 2018, Mr. Dain again e-mailed Mr. Schaalman, stating: "Again, I request you supply me the authority that permits you to 1) e-mail me the subpoena referenced below, and 2) allows you to do so on the closing date of discovery. Absent such authority, I must file a motion for protective order and will seek sanctions in that regard."  The e-mail is attached to the Declaration of Anthony Dain as Exhibit 5.

To this e-mail, Mr. Schaalman cryptically responded on September 17, 2018: "You should have received your subpoena today."  The e-mail is attached to the Declaration of Anthony Dain as Exhibit 6.  Mr. Dain immediately responded: "That does not answer the more critical question, which now is, what authority allow[s] you to serve me a subpoena for documents after the close of discovery.  Or, was the cutoff date extended?"  The e-mail is attached to the Declaration of Anthony Dain as Exhibit 7.  Mr. Schaalman did not respond to this request, so Mr. Dain subsequently sent Mr. Schaalman another e-mail on September 17, 2018 stating: "You having not answered my second question, led me to check the docket for this case.  I see by the Court's September 13, 2017 minute order that the discovery closing date remained September 14, 2018, with the only exception the taking of Bernard Black's deposition and the production of Ms. Litvak's medical records.  Thus, the issue

4

remains; did you serve on me a subpoena demanding documents in knowing violation of Northern District Local Rule 16.1(4), which emphasizes that the discovery closing date is the date upon which all discovery must be completed? Again, if I am wrong please let me know.  If I am not, however, given that the Court explicitly rejected your request to extend the discovery deadline, and your below affirmance of your intent to serve the subpoena, why shouldn't you be sanctioned for what is a deliberate sharp practice?" The e-mail is attached to the Declaration of Anthony Dain as Exhibit 8.

Despite the repeated admonitions by Mr. Dain on September 14 and September 17, 2018, that the subpoena was improper not only because of its e-mail service, but because it was e-mailed literally at 5:00 p.m. on the close of discovery and because it was in violation of requirements to state a date and time for response and which limit production to within 100 miles of Mr. Dain's residence, Mr. Schaalman did not call off personal service of the subpoena.  Rather, on September 18, 2018, Mr. Schaalman had Mr. Dain served at the San Diego offices of his law firm, Procopio.  Mr. Schaalman had the subpoena delivered to the firm's office of General Counsel, despite the fact the subpoena was to Mr. Dain personally, and despite that Mr. Schaalman knows Mr. Dain's home address. (Declaration of Mr. Dain, ¶ 12).  This choice of service was not accidental; during his deposition of Mr. Dain, Mr. Schaalman spent an inordinate amount of time inquiring about irrelevant matters including about Mr. Dain's firm and whether he had permission to use firm letterhead.

In response to Mr. Schaalman personally serving the subpoena on his law firm, on September 19, 2018, Mr. Dain wrote to Mr. Schaalman stating:

> "Procopio's General Counsel was personally served on September 18, 2018 with the subpoena you e-mailed me on September 14, 2018.  This was after my repeated admonitions that the subpoena was improper.  Although I am an individually named non-party in the invalid subpoena, you chose to serve the subpoena by personal delivery to my law firm Procopio.  This was a deliberate

abuse of process and an act of harassment for multiple reasons. First, I warned you on September 14, 2018, shortly after you e-mailed the subpoena, that it was invalid and improper. Thus, you had at least three days to stop the personal service you initiated. I again warned you on September 17, 2018 that the subpoena was improper, providing you the specific language in Local Rule 16.1(4) that you cannot serve a subpoena post discovery close. Your only response was to affirm you were going to personally serve the subpoena. Recall, when you deposed me, you curiously referenced my partnership position at Procopio and referenced my partners' knowledge of letters I had written. While my position at Procopio and the letters I wrote, had no relevance to your client's lawsuit against Ms. Wrigley, Ms. Kerr and Ms. Cohenson, the tenor of your questioning made clear that you intended to interfere with my firm practice. And, indeed, you did. You are no novice; you are an experienced litigator who knew what he was doing was improper under the rules of procedure, discovery and ethics.

Let me again detail the boldness of your violations.

First, you knew that discovery closed September 14, 2018. You were reminded of this in open court when Judge Kennelly denied your request to extend discovery shortly before it closed. So you knew without me reminding you that you were serving a subpoena on the date discovery closed. But I did remind you. I admonished you that you were in violation of Rule 16.1(4). It mandates:, "discovery *must be completed* before the discovery closing date." The italic emphasis on the word "completed" is in the original. Even if you, as a lawyer practicing 40 years, were confused as to what "completed" meant, which borders on the incredible, Rule 16.1(4) gives you an example: "Discovery requested before the discovery closing date, but not scheduled for completion before the discovery closing date, does not comply with this order." You couldn't have misunderstood, because your attempted request was intended for service after the discovery closing date.

Second, your purported subpoena was in multiple violation of FRCP 45. Again, irrespective of your forty plus years of practice, you had to know of the violations because Rule 45 is set forth on the very subpoena you served. Rule 45(a)(1)(iii) mandates that every subpoena must "command each person to whom it is directed to do the following at a specified time …" Your subpoena is blank as to "Date and Time." Rule 45(c)(2)(A) limits a subpoena for "production of documents … [to] a place within 100 miles of where a person resides, is employed, or regularly transacts business…" You served me in San Diego, California, and demanded I comply in Milwaukee, Wisconsin. That this is more than 100 miles can be judicially noticed.

In spite of my admonitions and request that you correct me

6

if I was misunderstanding the facts or law, you gave no substantive response and only partially responded to one of my inquiries.  Thus any attempt to further meet and confer would be futile.   In addition, given that I am a non-party, and this will likely require the initiation of a limited new action, I do not believe that I need do anything else prior to my filing a Motion to Quash seeking sanctions for your abuse of process.  I believe this is an issue that must be brought to the attention of the Court as I believe I am not the only person against whom you have perpetrated such an unethical act.  Again, feel free to correct me if I am wrong." The e-mail is attached to the Declaration of Anthony Dain as Exhibit 9.

Mr. Schaalman never responded to this last e-mail or communicated further with Mr. Dain.  Mr. Schaalman also made no attempt to correct or explain his behavior.

## II.

### THE SUBPOENA SHOULD BE QUASHED UNDER F.R.C.P.  RULE 45(D)(3)(A) FOR ITS MULTIPLE INVALIDATING VIOLATIONS

The subpoenas are improper under both the Local Rules for the Northern District of Illinois and the Federal Rules of Civil Procedure.  They should thus be quashed.

First, the District Court for the Northern District of Illinois set the final discovery cutoff in Plaintiff's case for September 14, 2018.  The District Court's Docket Entry of July 28, 2018, is attached to the Declaration of Anthony Dain as Exhibit 10.  Local Rules of the United States District Court for the Northern District of Illinois, Rule 16.1(4), titled Discovery Closing Date, mandates: "Except to the extent specified by the court on motion of either party, discovery must be *completed* before the discovery closing date." (Emphasis in original).  The pertinent section of the Local Rules is attached to the Declaration of Anthony Dain as Exhibit 11.  The subpoenas violate the Court's discovery cutoff order and, thus, violate Local Rule 16.1(4).  Plaintiff made no motion prior to the closing date to extend discovery further, choosing instead to defy the Court's Order and the Local Rules.

Second, the subpoena violates Federal Rule of Civil Procedure 45.  Under

7

Rule 45(a)(1)(A)(iii) the subpoena was required to state "a specific time" to produce the designated documents. Yet the sections for time and date in each subpoena were left blank. This failure to comply with the mandatory requirements of Rule 45, renders the subpoena facially invalid, unenforceable and subject to being quashed. See, e.g., *WH Holdings, LLC v. Ace American Ins. Co.,* 2010 WL 3732149, at *5 (9/17/10 N.D. Ill.) ("The failure of the subpoena served upon Buck to identify the Court from which it purportedly issued renders it facially invalid under Federal Rule of Civil Procedure 45(a)(1)(A)(ii). The rule is phrased in mandatory terms, and does not provide for any exceptions.") As with section (ii), section (iii) falls under Rule 45(a)(1)(A)(iii)'s mandatory preamble that "**Every subpoena must** … [set] a specified time .. to produce designated documents." (Emphasis added). Plaintiff's subpoena is facially invalid and must be quashed.

Additionally, under Rule 45(c)(2)(A) the subpoenas could command production of documents only "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Plaintiff served Mr. Dain at his place of employment in San Diego, California but commanded production at Mr. Schaalman's law offices in Milwaukee, Wisconsin. The Court may take judicial notice that production was not commanded at a place within 100 miles of Dain's and Russo's employment. Federal Rule of Evidence 201(b)(2). "[A] subpoena duces tecum issued by a federal court cannot be served upon a nonparty for the production of documents located outside the geographic boundaries specified in Rule 45." *Legion Ins. Co. v. John Hancock Mut. Life Ins. Co*., 33 Fed. Appx. 26, 28 (3d Cir.2002); see also, *Jefferson v. Biogen,* 2012 WL 1150415, at *2 (Apr. 5, 2012 E.D. NC.). (Geographically improper subpoena quashed as facially invalid; Court noted subpoena was also untimely as beyond discovery cutoff). For the same reasons, Plaintiff's subpoena in the instant case is invalid on its face.

Third, the invalid subpoena poses an undue burden on third party Dain. As set forth in the above sections, and explained in footnotes 2 and 3 above, the subpoena

seeks categories of documents unrelated to the lawsuit in issue, but rather related to federal actions in New York and state probate and conservatorship actions in New York and Colorado.  Additionally a review of the categories reveals the subpoena seeks documents in categories over an excessive period.

## III.

**SANCTIONS SHOULD BE IMPOSED AGAINST PLAINTIFF AND MR. SCHAALMAN FOR THEIR ABUSE OF THE DISCOVERY PROCESS AND FEDERAL RULES.  MR. SCHAALMAN SHOULD BE SPECIFICALLY SANCTIONED BECAUSE HE IS AN EXPERIENCED LITIGATOR WHO HAS BEEN SANCTIONED BEFORE FOR EGREGIOUS DISCOVERY ABUSES; MOST RECENTLY IN 2013, SCHAALMAN WAS FOUND TO HAVE CONCEALED EVIDENCE PROVING THAT HE AND HIS PLAINTIFF CLIENT WERE ILLEGALLY INFLUENCING THE JUDGE SITTING ON HIS CASE; THE STATE SUPREME COURT AFFIRMED A SPECIAL MASTER'S DISMISSAL OF THE CASE FOR THE ILLEGAL INFLUENCING SCHEME, AND AFFIRMED A JOINT AND SEVERAL DISCOVERY SANCTION AGAINST SCHAALMAN AND HIS CLIENT FOR THEIR DISCOVERY ABUSES IN THE AMOUNT OF $1,500,000; THE STATE SUPREME COURT FOUND THAT SCHAALMAN HAD, "PREJUDICED THE ADMINISTRATION OF JUSTICE AND THE INTEGRITY OF [IT'S] PROCEEDINGS."**

Federal Rule of Civil Procedure 45(d)(1), provides: "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." [4]

---

[4] The court for the district where compliance is required is the Southern District of California.  This is irrespective of the subpoena's demand - in violation of Rule 45(c) - that production be in Milwaukee, Wisconsin.  In a situation similar to the one at hand, where a party served subpoenas commanding compliance outside of the 100 mile limit of Rule 45(c), the United States District Court for the Central District of Illinois held:

"In light of the purposes behind Rule 45, the Court finds that the better approach is to tie the place of compliance to the location of the subpoenaed person or entity. The Advisory Committee Notes for the 2013 amendments suggest that part of the reason for the amendments was to protect nonparties:

To protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that the motions be made in the court in which compliance is required under Rule 45(c).

Fed. R. Civ. P. 45, Advisory Committee Notes, 2013 Amendment

Plaintiff and her attorney Mr. Schaalman did not take reasonable steps to avoid imposing undue burden or expense on Mr. Dain. Rather, they actively took steps to impose undue burden and expense on him. First, Mr. Schaalman is an experienced litigator, having practiced as one for more than 30 years. Having chosen to file an action in the Northern District of Illinois, he is tasked with knowing the local rules, including Local Rule 16.1(4). The rule is clear and unequivocal – even providing an example – that Close of Discocery is the date discovery must be *completed.* (Itallics in original.) Thus, Mr. Schaalman "could not have believed the subpoenas were enforceable given the plain language of Rule 45 and the local rules of court." *In re Byrd, Inc.,* 927 F.2d 1135, 1137-1138 (10th Cir. 1991). Second, Mr. Dain repeatedly warned Mr Schaalman that the subpoena he had e-mailed was improper. Yet, instead of withdrawing the subpoena, Mr. Schaalman purposefully went forward and personally served the facially invalid subpoena upon Mr. Dain at his place of employment. In *Caretolive v. Von Eschenbach,* 2008 WL 552431, at *3 (S.D.Ohio Feb. 26, 2008), the District Court concluded that sanctions should be

(pertaining to subdivision (f), the transfer of a subpoena-related motion). The purpose of protecting nonparties is defeated if a party could demand compliance in a location more than 100 miles from where the nonparty resides, is employed, or regularly transacts business in person and still require the nonparty to adjudicate a dispute over that subpoena in a distant forum. And the phrase, "the court in which compliance is required under Rule 45(c)" contained in the Advisory Committee Notes also supports this interpretation. Rule 45(c) requires that the subpoena command production within 100 miles of where the person resides, is employed, or regularly transacts business in person. Therefore, the court in which compliance is required under Rule 45(c) is the court in the district within 100 miles of where the subpoenaed person resides, is employed, or regularly transacts business in person." *Raap v. Brier & Thorn, Inc.,* 2017 WL 2462823, at *3 (C.D. Ill. July 7, 2017).

Other district courts have similarly protected nonparties from a party's gamesmanship and improper forum shopping. See, *Agincourt Gaming, LLC v. Zynga, Inc.,* No. 2:14-CV-0708-RFB-NJK, 2014 WL 4079555, at *4 (D. Nev. Aug. 15, 2014) ("As an initial matter, Rule 45 makes clear that the place of compliance is tethered to the location of the subpoenaed person. See Fed. R. Civ. P., Rule 45(c)(2)(A) (the place of compliance must be 'within 100 miles of where the person resides, is employed, or regularly transacts business in person')"); see also *XTO Energy, Inc. v. ATD, LLC,* No. 14–1021 JB/SCY, 2016 WL 1730171, at *20 (D.N.M. Apr. 1, 2016) ( "[R]evised rule 45(d)(3) provides that motions to quash or enforce a subpoena can be brought in the district where compliance is required—i.e., the district in which the subpoena's recipient resides or works …")

imposed for expenses incurred in addressing invalid subpoenas, especially where the issuing party was informed of the defects and failed to act in response. The Court noted that the 1991 Advisory Committee Notes for Rule 45, explained that, "Rule 45's sanctions provision was intended primarily to protect 'a non-party witness as a result of a misuse of the subpoena[,]'" and that Rule 45(c)(1) established an obligation on parties "to respect the rights of third parties and [to] avoid using the subpoena process to impose undue burden or expense." Similar to the conduct at bar, in *Caretolive,* plaintiff's counsel improperly served a facially invalid subpoena, outside the allowed discovery period – in *Caretolive* before discovery was allowed to begin, here, after discovery was cutoff – and ignored repeated warnings by the third party that the subpoena was defective. Considering such discovery abuse, the District Court awarded sanctions, stating: "When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense[,]'" *Ibid.* Plaintiff and her attorney, here, deserve to be sanctioned for their intentional abuse.

Attorney Schaalman, however, deserves specific attention in considering sanctions. Attorney Schaalman has a pathetic and most sordid history of discovery abuse. This history spans Mr. Schaalman's entire career and includes two published cases. Imagine in any legal career, having two **published** cases naming an attorney as a willful discovery abuser. In the first published case, in 1980, young attorney Schaalman was held in contempt for failing to turn over evidence in an Illinois state case. *Consolidation Coal Co. v. Bucyrus-Erie Co.*, (1980), 93 Ill.App.3d 35, 37.

The second published case came much later and more recently in Mr. Schaalman's lengthy career. In a notorious corruption case in Mississippi, Mr. Schaalman and his plaintiff client, paid a witness for testimony, then concealed, obfuscated and refused to provide the documentary evidence that laid out the fraud perpetrated on the court system. Additionally, Mr. Schaalman provided false discovery responses regarding this scheme. When he and his client were eventually

caught, the Court appointed a special master to oversee discovery to get to the bottom this scheme.  Instead of complying, Schaalman and his client continued to obfuscate.  When the special master issued a negative Report and Recommendation, Schaalman's response was to illegally hire an ex-prosecutor to influence the judge sitting on the case.  Through this illegal influence Schaalman and his client were able to get the judge to disregard the R&R and appoint a new special master more to their liking.  When the sitting judge's corruption was discovered by the FBI, the sitting judge was forced to resign, and Schaalman's illegal influence scheme was also discovered.  A new Court was appointed and that Court issued severe and appropriate sanctions.  First, the Court dismissed the client's case with prejudice. The Court then appointed a new special master to obtain discovery evidencing the depth of concealment and influence scheme.  Schaalman and his client continued to obfuscate and failed to turn over documents that were relevant and subject to discovery.  When the documents were ultimately discovered, Schaalman was jointly and severally sanctioned $1,560,000 for his intentional discovery violations.  The Mississippi Supreme Court affirmed, concluding that Schaalman had not only caused prejudice to the defendants in the case, but had "prejudiced the administration of justice and the integrity of [its] proceedings." *Eaton Corporation LLC v. Frisby LLC,* (2013) 133 So.3d 735, 759.  A full copy of the Mississippi Supreme Court Opinion is attached to the Declaration of Anthony Dain as Exhibit 12.

Mr. Schaalman has shown no respect for the rules of practice designed to ensure the orderly administration of justice. He has flouted mandatory discovery rules, and ignored reasonable attempts by the third party in this case to correct his misbehavior.  He has obviously learned nothing from his harsh lessons of thirty-eight and six years ago.  Under Rule 45(d)(1), and Rule 26, this Court must sanction Plaintiff and Schaalman for their discovery abuses to the fullest reasonable extent.

Sanctions may be imposed, "when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice v.*

1  *Stormans, Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013); *Mount Hope Church v. Bash*

2  *Back!*, 705 F.3d 418, 425, 428 (9th Cir. 2012); *Mattel, Inc. v. Walking Mountain*

3  *Prods.*, 353 F.3d 792, 814 (9th Cir. 2003)).  These invalid subpoenas are simply,

4  "piece[s] of paper masquerading as legal process." *Theofel v. Farey-Jones*, 359 F.3d

5  1066, 1074 (9th Cir. 2004).  "The district courts wield their various sanction powers

6  at their broad discretion." *Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir.1993)

7  (collecting cases). Because attorneys use subpoenas to further discovery, sanctions in

8  the subpoena context often implicate the sanction provisions in both Rules 26 and

9  45. See Fed R. Civ. P. 26(g) (discovery-related sanctions); 45(c) (subpoena-related

10  sanctions); *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir.1994) (looking to

11  Rule 45 in overbroad subpoena case because Rule 26(c) provision at issue expressly

12  invoked sanction authority of Rule 37); see also *Judson Atkinson Candies, Inc. v.*

13  *Latini–Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir.2008) (noting that Rule 26

14  "factors are equally applicable to considering the imposition of sanctions" under

15  Rule 45); In re Byrd, Inc., 927 F.2d 1135, 1137 (10th Cir.1991) (affirming sanctions

16  ordered under Rule 26(g) for issuing invalid subpoenas).

17    "Attorneys derive the authority to issue subpoenas from their status as court

18  officers. Thus, "lawyer-issued subpoenas [are] mandates of the [issuing] court." Fed.

19  R. Civ. P. 45 1991 advisory committee's notes (citations omitted). With this power

20  comes "increased responsibility and liability for [its] misuse." *Id*.; see also *Theofel v.*

21  *Farey–Jones*, 359 F.3d 1066, 1074 (9th Cir.2004) ("The subpoena power is a

22  substantial delegation of authority to private parties, and those who invoke it have a

23  grave responsibility to ensure it is not abused."). Indeed, the magnitude of the public

24  trust vested with attorneys in this regard is so great that some jurisdictions recognize

25  causes of action for abuse of subpoena and malicious prosecution. See, e.g., *RRR*

26  *Farms, Ltd. v. Am. Horse Protection Ass'n*, 957 S.W.2d 121, 133–34 (Tex.App.-

27  Houston [14th Dist.] 1997, pet. den.)." *Mick Haig productions, e.K. v. Does*, 2011

28  WL 5104095 at *4 (N.D. TX, Sept. 9, 2011)(" The Court therefore finds that he

13

deserves sanctions under Rules 26 and 45 for issuing invalid subpoenas." Id., at *7).

*Thompson v. Carrier Corp.*, 2009 WL 3446391, at *2 (M.D.Ga. October 21, 2009) (imposing sanctions in the amount of reasonable attorney's fees incurred in bringing motion to quash two improperly served Rule 45 subpoenas); *Tidwell–Williams v. Northwest Georgia Health System*, 1998 WL 1674745, at *1 (N.D.Ga. November 19, 1998) (noting that forcing a non-party to defend against the untenable position of the party who issued the Rule 45 subpoena constitutes an undue burden supporting the imposition of sanctions).

"A court's inherent power includes the discretionary 'ability to fashion an appropriate sanction for conduct which abuses the judicial process.' " *Stevenson v. Union Pac. R.R.*, 354 F.3d 739, 745 (8th Cir.2004) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). "[D]istrict courts enjoy very broad discretion to use sanctions where necessary to insure ... that lawyers and parties ... fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial." *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011) (internal citation and quotation omitted); see also *Unigard Sec. Ins. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) ("Courts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' ")(internal quotations omitted). "Sanctions are intended to ameliorate prejudice caused to an innocent party by a discovery violation, punish the party that violated its obligations, and/or deter others from committing similar violations." *Urban v. United States*, 2006 WL 2037354 at *9 (N.D. Ill. July 14, 2006).

Under Federal Rules of Civil Procedure, Rule 26(g)(1)(B)(i) and (iii), and 26(g)(3), on signing and serving the invalid subpoenas, "the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the

1  reasonable expenses, including attorney's fees, caused by the violation."

2  **IV.**

3  **REASONABLE SANCTIONS ARE THE VALUE OF MR. DAIN'S HOURLY**
4  **RATE INCURRED IN MOVING TO QUASH, WHICH HE COULD HAVE**
   **OTHERWISE SPENT PRODUCTIVELY AT HIS PARTNERSHIP;**
   **ADDITIONALLY THE OUT-OF-POCKET COSTS OF FILING THIS**
5  **MISCELLANEOUS ACTION AND FOR SERVICE OF THE ACTION ON**
   **PLAINTIFF SHOULD BE AWARDED**

6

7      Mr. Dain is an attorney with the law firm Procopio, Cory, Hargreaves and
8  Savitch LLP.  He is the team leader of the Intellectual Property Litigation Team, and
9  has a very busy practice.  He was forced to take critical time away from his practice
10 to research and prepare this motion.  As stated above, "When a subpoena should not
11 have been issued, literally everything done in response to it constitutes 'undue
12 burden or expense[,]'" Caretolive v. Von Eschenbach, supra 2008 WL 552431, at *3.
13 In responding to this subpoena, Mr. Dain spent 4.3 hours researching case authority.
14 This was appropriate given the multiple violations and challenges Plaintiff imposed,
15 i.e., no date and time, state of production Wisconsin, after the discovery cutoff.  The
16 motion took 8.6 hours to draft and edit.  Mr. Dain has practiced for 38 years, is a
17 federally certified patent lawyer and state certified appellate specialist.  His hourly
18 rate is $975.  Mr. Schaalman knows Mr. Dain's background and practice, having
19 deposed him, and therefore understood the burden he was imposing.  Given the
20 circumstances, $975 per hour is a reasonable and fair rate to charge for the time.
21 Thus a sanction of $12,577.50 in fees is appropriate.  An additional cost of $400 for
22 the first filing fee to quash an out of state subpoena and $300 to have the first filing
23 served upon Plaintiff are appropriate,  Thus a sanction of $13,277.50  jointly and
24 severally against plaintiff and her attorney is appropriate to address the undue burden
25 and expense caused by their intentional service of a facially invalid subpoena.

26

27

28

**V.**

**ALTERNATIVELY AT THE COURT'S DISCRETION THE MATTER SHOULD BE TRANSFERRED TO THE DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO F.R.C.P. RULE 45(F).**

Federal Rules of Civil procedure 45(f) provides in pertinent part: "When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." In the event this Court feels more comfortable having a court more familiar with the facts and procedure of the underlying case handle this issue, then, in the alternative, non- party movant requests that this Court transfer the matter to the District Court for the Northern District of Illinois.

**VI.**

**CONCLUSION**

For the foregoing reasons the subpoena served upon non-party Anthony Dain should be quashed. It was served after the Discovery Cutoff Date, and is thus in violation of the District Court's Order and Local Rule 16.1(4); it had no time or date specified for production, in violation of F.R.C.P. 45(a)(1)(A)(iii); and, it was in violation of the geographical limits of Rule 45(c)(2)(A). It is thus facially invalid. Mr. Dain warned Plaintiff's attorney Schaalman on multiple occasions before Schaalman personally served the subpoena that it was defective; Schaalman ignored the warnings and intentionally personally served Mr. Dain at his place of employment. Plaintiff and Mr. Schaalman should be sanctioned $13,277.50.

DATED: October 12, 2018

s/ Anthony J. Dain
Anthony J. Dain